# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:CR-09-319** |
| : | |
| v. : | |
| : | |
| **SEAN N. HEALY** : | |

## **M E M O R A N D U M**

By memorandum and order dated March 28, 2013 (Doc. 75), this court denied a motion filed by Healy pursuant to 28 U.S.C. § 2255. By order dated April 10, 2013 (Doc. 78), this court deemed Healy's reply brief to the government's response to be timely filed and granted reconsideration of the March 28, 2013 memorandum and order.[1] By memorandum and order dated April 15, 2013 (Doc. 79), this court reaffirmed its denial of Healy's § 2255 motion.

On April 26, 2013, Healy filed a motion pursuant to Federal Rule of Civil Procedure 59(e) "to amend and alter judgment and motion for revocation of remand" (Doc. 80). Healy objects to this court's dismissal of certain claims labeled "new discovery." He claims that "a party may properly raise a new claim or defense . . . if the claim or defense arose out of conduct, transaction, or accurate [sic] set out – or attempted to be set out – in the original pleading." (Doc. 80 at p. 2.[2]) Healy claims the "new discovery" was not available until after his initial brief was filed.

---

[1] A correction to that memorandum is in order. At page 2 of document 78, the last paragraph refers to "Items O through J . . ." is obviously an error. There were no items specifically alphabetized after item N.

[2] The page numbers refer to the numbers generated by the electronic case filing system, located at the top right area of each page.

Healy sets forth the "new discovery" as follows:

> Counsel was ineffective by representing conflicting interests that adversely affected his performance, advice, and loyalty to Mr. Healy. These conflicts denied Mr. Healy the benefit of competent counsel with effective professional advice.
>
> A [S]ixth [A]mendment right to effective assistance of counsel may be violated when an actual conflict of interest adversely effects the adequacy of the defendant's representation.
>
> A) Counsel failed to depose or cross examine Alfred Madeira and Thomas Ahrens.
>
> B) Counsel failed to subpoena Alfred Madeira and Thomas Ahrens bank account statements.
>
> C) Counsel failed to depose or cross examine any of the victims.
>
> D) Counsel failed to subpoena any of the victims account statements.
>
> E) Counsel failed to challenge the government regarding any baseless claims that were presented by Madeira and Ahrens.
>
> F) Counsel failed to investigate how much money was sent to Madeira and Ahrens as well as how much they sent to Mr. Healy, as well as how much money Mr. Healy sent to Madeira and Ahrens.
>
> G) Counsel failed to investigate how the monies Ahrens and Madeira raised:
>    1. What was promised from them.
>    2. Why their investors invested.
>    3. What their investors were promised in return.
>    4. Who promised the investors.
>    5. Who they spoke with.
>    6. Who they met with.
>    7. If they ever met or spoke to Mr. Healy.
>    8. Who signed all their loans and promissory notes and mortgages.
>    9. Who prepared the loans and promissory notes and mortgages.

        H)      Counsel failed to challenge the indictment, the plea, PSR, and sentencing that was brought against Mr. Healy based on fraudulent statements by Madeira and Ahrens.

        I)      Counsel failed to investigate the monies that were sent to Madeira and Ahrens and the differences in amount that they sent to Mr. Healy. *Minnesota Lawyers Mutual Insurance v. Ahrens*, 2010 U.S. Dist. LEXIS 107873 (M.D. Pa., Oct. 8, 2010). Alfred Madeiras Bankruptcy filing April 14, 2009 filed in Middle District of Pennsylvania United States Bankruptcy Court. Presentence Report Sean N. Healy.

        J)      Counsel never investigated monies or did a forensic accounting of monies.

(Doc. 76 at p. 20.)

      The conflict of interest allegation has been addressed by this court in its initial memorandum and order (Doc. 75) and found to be without merit. All the issues raised by Healy involving Madeira and Ahrens are likewise without merit. Regardless of lawsuits filed against these two individuals, all discovery that Healy claims should have been performed by Marino does not detract from the finding that Madeira and Ahrens were victims of Healy.

      The presentence report contains the following descriptive paragraphs regarding the scheme:

> 11. The scheme unraveled in March 2009 when a Pennsylvania investor named Al Madeira sued Healy in United States District Court in Florida. Madeira, along with 72 other Pennsylvania investors, wired at least $15 million to a bank account in Healy's wife's name at Bank of America (BOA) between May 2008 and February 2009. The money was to be used by Healy for investment purposes, such as purchasing Ruth Chris stock, and gold, silver, and oil futures contracts. By August 2008, Healy led Madeira to believe that he was entitled to about $40 million that was being held in trading accounts managed by people Healy named "Matt" and "Andy." Madeira never

3

met these people who, as he later learned, did not exist. Healy indicated that regulators had put restrictions on the "Matt" and "Andy" accounts, and Healy requested additional funds from Madeira to lift the restrictions and to make additional trades which were supposedly guaranteed to make profits because gold had already hit its strike price on the gold futures contracts being purchased.

12. Madeira had no more funds to invest, so he began to borrow money from friends, family, and third parties to send to Healy. Madeira's attorney, Tom Ahrens, drafted promissory notes and joint venture agreements between Madeira and the third parties for this purpose. Ahrens also invested and recruited his clients to lend Madeira money for this purpose, sometimes personally guaranteeing the transactions. Some of these third parties wired funds directly to Healy, but most provided money to Ahrens or Madeira. As a result of this new infusion of money, Madeira and Ahrens were told they could expect huge payouts by the end of the year.

13. When the payouts never materialized, Madeira and Ahrens became suspicious and Healy gave various excuses for the delays, including needing more money from Madeira to lift the regulators' restrictions, or that "Matt's" mother died and he could not process the transactions. Eventually, Madeira sued Healy on March 6, 2009, in the Southern District of Florida, and contacted law enforcement in Harrisburg.

14. Healy was deposed in connection with the Florida lawsuit on April 7, 2009, and falsely claimed that Madeira and the other Pennsylvania investors' money was invested as promised, but lost because Madeira failed to provide additional funds. Healy disavowed any knowledge of "Matt" or "Andy" and claimed that the trades were made through an individual named "Mike Hein," who supposedly lived in New York and executed the trades through a brokerage house named PCF. In support of these false claims, Healy created fraudulent bank statements from the BOA account showing $23 million in wire transfers to PCF in New York. Healy also created fraudulent PCF records and other fraudulent records from a brokerage house named Interactive Brokers, which he claimed proved the trades were made.

(Presentence Report at pp. 3-4.)

The fact that Madeira and Ahrens defrauded others does not make them any the less victims of Healy's fraud. Admissions by Healy as to his fraud against Madeira appear in the sentencing transcript: "I betrayed my friendship with Al Madeira." (Doc. 54 at p. 16, lines 6-7.) "We had a great friendship. I hope one day in the future sometime he'll forgive me. I know it will take a lot of repairing, but I'll do whatever it takes. I miss my friendship with him." (*Id*., lines 9-12.) "I did a really bad thing. I betrayed my friendship with Al Madeira, who was like a brother to me which is killing me inside. We had a great friendship." (*Id.*, lines 6-9.)

This court reads this to be an acknowledgment that, in fact, Madeira was one of Healy's victims. This "new discovery" of lawsuits filed against Madeira would not have negated this finding.

Healy alleges that Marino was incompetent for allowing him to attend criminal proceedings while being under the influence of illegal drugs. This issue was framed different from his initial pleading. In his initial motion, Healy claimed Marino was deficient "for not mentioning to the court Mr. Healy's drug addiction at sentencing . . . ." (Doc. 76 at p. 68.) As framed immediately above, this issue was addressed by the court in its March 28, 2013 memorandum and order. (Doc. 75 at p. 8.) In any event, Healy could have raised this newly worded issue in his initial motion.

As to the latter issue, it is of interest to note that at Healy's change of plea proceeding, he replied under oath to the following question by the court:

THE COURT: Have you taken any drugs or alcohol before coming into court today?

HEALY: No sir – no ma'am.

5

(Doc. 33 at p. 3.)  His plea was taken while Healy was not under the influence of drugs.

Based on the foregoing, Healy's motion pursuant to Federal Rule of Civil Procedure 59(e) will be denied.[3]  An appropriate order will be issued.


                                                  s/Sylvia H. Rambo
                                                  United States District Judge

Dated:  April 30, 2013.

---

[3] This court has no idea as to what the defendant is requesting by the latter part of the title of his document – "Motion for Revocation of Remand."  (Doc. 80.)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : **CRIMINAL NO. 1:CR-09-319**
:
**v.** :
:
**SEAN N. HEALY** :

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT** the motion to amend and alter judgment (Doc. 80) is **DENIED**.

                                                            s/Sylvia H. Rambo
                                                          United States District Judge

Dated: April 30, 2013.